AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone<br>Model: iPhone 13 Pro Max<br>IMEI: 356370169658991 | )<br>)<br>)  Case No.  22-MJ-08589-DEB<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Clayton Narde incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Clayton Narde
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: __08/15/2022__

*Judge's signature*

City and state: San Diego, California     HON. DANIEL E. BUTCHER, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

I, Clayton Narde, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>Apple iPhone
>Model: iPhone 13 Pro Max
>IMEI: 356370169658991
>(Target Device #1)

>Apple iPhone (Blue)
>Model: iPhone 12 Pro Max
>IMEI: 354741664890895
>(Target Device #2) (collectively "Target Devices")

as further described in Attachment A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Robert BARAJAS (BARAJAS) and Victor HERNANDEZ (HERNANDEZ) for transportation of illegal aliens Rene Sabas CRUZ-Barragan, Concepcion CANSECO-Reyes, and Gilberto MENDOZA-Santana (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from BARAJAS and HERNANDEZ on or about July 22, 2022, incident to the arrests of BARAJAS and HERNANDEZ. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation.

1

The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

3

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On July 22, 2022, Border Patrol Agent (BPA) Cruz and BPA Stephan were patrolling the border approximately thirteen (13) miles west of the Calexico, California West Port of Entry. BPA Stephan notified Remote Video Surveillance System operators (RVSS) over his service radio that he observed footprints going across the border road indicating a group of individuals had possibly made an illegal entry. BPA Stephan relayed that the group was heading northbound towards Highway 98 and Mt. Signal Road. At

approximately 7:30 a.m., RVSS reported via service radio that a grey colored sport utility vehicle (SUV) had made a U-turn near Mt. Signal Road. The RVSS operator also notified BPA Cruz that the vehicle had pulled over on the shoulder of Highway 98 and Mt. Signal Road and three individuals boarded the SUV. The SUV continued eastbound on Highway 98. BPA Cruz began driving eastbound on Highway 98 and encountered the SUV going eastbound on Highway 98. BPA Cruz requested record checks on the vehicle, and the checks revealed a release of liability. BPA Cruz pulled next to the SUV and observed the driver, later identified as HERNANDEZ, had a stiff grip on the steering wheel and was avoiding eye contact. BPA Cruz also noticed there were individuals laying down in the backseat.

11.     BPA Cruz initiated a vehicle stop on Drew Road, approximately 100 yards north of Highway 98. The SUV failed to yield to the lights and siren of BPA Cruz's marked Border Patrol unit. BPA Cruz continued to pursue the SUV northbound on Drew Road and then eastbound on Lyons Road and sped up to approximately 75 miles per hour. Border Patrol Agent Cain attempted to deploy a vehicle immobilization device at the intersection of Lyons and Brockman Road but the SUV avoided the spikes and continued eastbound on Lyons Road. The vehicle then turned southbound on Ferrell Road. The vehicle failed to stop at the stop sign and then turned eastbound back onto Highway 98. The vehicle approached the outer limits of the city of Calexico and ran a stop sign at Highway 98 and D. Navarro Street. At this point, Supervisory Border Patrol Agent (SBPA) Soledad instructed Agents via service radio to terminate the pursuit and instructed BPA Cruz to follow the SUV at a safe distance. BPA Cruz observed the vehicle make a southbound turn on Ollie Avenue from Highway 98. BPA Cruz lost visual of the vehicle for an instant and then regained visual of the vehicle making a southbound turn on Imperial Avenue from Sheridan Street in Calexico. BPA Cruz then lost complete visual of the vehicle as it sped southbound in Calexico.

12.     At approximately 8:05 a.m., SBPA Walker advised over his service radio that he had encountered the SUV while driving near 4th street and Beach Avenue in Calexico

and had conducted a vehicle stop. SBPA Walker encountered four (4) individuals inside the vehicle. SBPA Walker determined that three (3) of the individuals did not have legal documentation to live, reside or work in the United States. Those individuals were identified as Rene BARRAGAN-Cruz (BARRAGAN), Concepcion CANSECO-Reyes (CANSECO), and Gilberto MENDOZA-Santana (MENDOZA). The driver SBPA Walker encountered was identified as BARAJAS. Upon his arrival, BPA Cruz noticed that the original driver he had observed, HERNANDEZ, was not among the individuals that SBPA Walker had encountered. After a brief search of the area, SBPA Walker located HERNANDEZ. All individuals were placed under arrest and transported to the Calexico Border Patrol Station for processing.

13. During a search incident to arrest of BARAJAS, an iPhone 13 Pro Max (Target Device #1) was located in BARAJAS' pocket. A search incident to the arrest of HERNANDEZ revealed an iPhone 12 Pro Max (Target Device #2) in HERNANDEZ's pocket. Both Target Devices were seized as evidence. BARAJAS and HERNANDEZ were charged by Complaint on July 25, 2022, in Case No. 22-MJ-08525.

14. BPA Arreola and BPA Sandoval conducted a sworn statement with BARAJAS. BARAJAS stated he and his friend Victor agreed to be paid $500 dollars by a smuggler of the name Brandon in order to smuggle illegal aliens. BARAJAS stated he and Victor picked up the smuggling conveyance in a parking lot in Calexico, CA. BARAJAS stated the keys were found by the gas cap and Victor drove towards Highway 98. BARAJAS stated they picked up three (3) illegal aliens and then drove towards Calexico, CA. BARAJAS stated he observed the marked Border Patrol vehicles with their overhead lights on and in pursuit behind them trying to pull them over. BARAJAS stated Victor wanted to pull over and give up, but he told Victor to keep going in order to avoid arrest. BARAJAS stated Victor pulled over and they switched drivers, and he got in the driver seat and began driving away from Border Patrol Agents towards Calexico, CA. BARAJAS stated he drove for about 10 minutes and then pulled over and exited the vehicle along with Victor. BARAJAS stated he does not know if the illegal aliens were wearing proper

1 seatbelts while in the vehicle. BARAJAS stated this is his second time being apprehended by U.S. Border Patrol Agents.

15. BPA Arreola and SBPA Gomez conducted a sworn statement with HERNANDEZ. HERNANDEZ stated he and his friend Robert agreed to be paid an unknown amount to smuggle illegal aliens. HERNANDEZ stated that he was instructed to pick up a gray colored SUV from a parking lot in Calexico, CA. HERNANDEZ stated he then drove towards Highway 98 while being guided and instructed by phone as to where to pick up the illegal aliens. HERNANDEZ stated he drove for approximately ten (10) minutes and picked up three (3) illegal aliens. HERNANDEZ stated he observed U.S. Border Patrol Agents attempting to pull him over but continued driving. HERNANDEZ stated that he panicked and got scared and agreed to switch drivers while the vehicle was in motion. HERNANDEZ stated Robert got in the driver seat an and drove towards Calexico, CA, ignoring stop signs and streetlights. HERNANDEZ stated that Robert drove for approximately 10 to 15 minutes before coming to a stop. HERNANDEZ stated he exited the vehicle and proceeded to hide in a nearby apartment complex to avoid being arrested. HERNANDEZ stated he then exited the apartment complex attempting to turn himself into U.S. Border Patrol Agents. HERNANDEZ stated this his second time being arrested for alien smuggling.

16. BPA Macias and BPA Flores conducted a sworn statement with the Material Witness BARRAGAN. BARRAGAN stated he is a citizen of Mexico who entered the United States illegally on July 22, 2022. BARRAGAN stated that he feared for his life because they were traveling at a very high rate of speed and felt like the vehicle was going to lose control and roll. BARRAGAN was able to identify both BARAJAS and HERNANDEZ through two separate six-pack photo lineups.

17. BPA Macias and BPA Flores conducted a sworn statement with the Material Witness Gilberto MENDOZA. MENDOZA stated that he is a citizen of Mexico who entered the United States illegally on July 22, 2022. MENDOZA stated that he told BARAJAS and HERNANDEZ to stop the vehicle. MENDOZA stated that he feared for

7

his life because they were traveling at a very high rate of speed and felt like the vehicle was going to lose control. MENDOZA was able to identify both BARAJAS and HERNANDEZ through two separate six-pack photo lineups.

18. Based upon my experience and investigation in this case, I believe that BARAJAS and HERNANDEZ and other persons, as yet unknown, were involved in an alien smuggling venture and that BARAJAS and HERNANDEZ used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on June 23, 2022, up to and including July 23, 2022, the day after the arrests of BARAJAS and HERNANDEZ.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//

9

## CONCLUSION

23. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that BARAJAS and HERNANDEZ used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by BARAJAS and HERNANDEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Clayton Narde, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of August, 2022.

_____
HON. DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone
    Model: iPhone 13 Pro Max
    IMEI: 356370169658991



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone (Blue)
>Model: iPhone 12 Pro Max
>IMEI: 354741664890895



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 23, 2022, up to and including July 23, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

    Apple iPhone
    Model: iPhone 13 Pro Max
    IMEI: 356370169658991



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone (Blue)
>Model: iPhone 12 Pro Max
>IMEI: 354741664890895



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 23, 2022, up to and including July 23, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of Title 8 U.S.C. § 1324.